Judge Underwood,
delivered the opinion of the court.
In May, 1818, Bartlett executed his bond to Richard Blanton, now dead, conditioned to convey one hundred and forty acres of land on or before the 1st day of October following with a covenant to refund the purchase money, to-wit: ‡1,200, without *427 interest, in case the land should be lost. In February, 1821, Richard Blanton assigned said bond to Carter Blanton, who, in March, 182i, instituted an action of covenant thereon, assigning for breach, the non-conveyance of the land. In March, 1825, Carter Blanton recovered a judgment in the action of covenant for $1,200. Bartlett then filed his bill with injunction, praying that Carter Blanton, the assignee, might be compelled to accept a title. Said Carter and the administrator of said Richard were made defendants. The equity relied on in the bill, is in substance “that on the-day of-the complainant applied to Richard Blanton, and offered to execute a deed of conveyance agreeably to the bond, but lie declined receiving it at that time, giving or intimating as a reason for it, that some of his judgment creditors would levy on the land and have it sold, he being then much embarrassed; upon these suggestions,the deed was not made. Said Blanton agreed that when he wanted a conveyance of the land he would call on the complainant for it.”
The bill also alleges, that-J. J. Marshall was jointly interested with Blanton, in the purchase and that the complainant applied to him about the time the conveyance ought to have been made, and offered to make it when Marshall desired that the complainant would not convey, but would retain the title until called on specially for a conveyance. The bill charges that Blanton was put in possession and that he, and those claiming under him, have been in the enjoyment of the land since the contract, and that the complainant has always been ready and willing to make a title. With the bill, the complainant filed and tendered a deed, purporting to convey the one hundred and forty acres of land to Carter Blanton, and which bears date the 15th of March, 1824, ten days subsequent to the service of the writ in the action of covenant. The complainant likewise exhibited his chain or derivation of title from the com.-monwealih.
Carter Blanton in his answer, states that at the time he took the assignment of the bond he understood the complainant had failed to comply with it and was bound for the money, that the bond was assigned to him to secure the payment of money loaned a,nd due by Richard Blanton and J. J. Marshall, and that he was pro *428 ceeding with a view to get the money. He puts tbe corr)plainai)t upon the proof of all his material allega-yong> jje in¡dis;s that the land is greatly depreciated in value, the improvements having been suffered to decay and makes it a question for the court, how far the complainant should be countenanced in a court of equity when his failure to convey was the consequence of art agreement to defraud or to delay the creditors of Richard Blanton.
Want of theregular regis-trationofthe which Vendor deduces title, other Voofof thefr execu- ° tion, is insu-Son tr»6 ob^eo" polling vendee to receive a Tonyeyancc.
Blanton’s administrator denies any knowledge of the material allegations of the bill. Says that “he is advised that the complainant had not the legal title during Richard Blanton’s life, and of course could not during that period have made a title.” He requires full proof of all the material allegations of the bill.
Upon the calling of the cause in March, 1839, the complainant discovered for the first time, as he swore, that one of the deeds through which he claimed title had not been proved or acknowledged and admitted to record within the time required by law. lie therefore, tendered an amendment to his hill, making the grantor a party, and charging, that the deed which had not been recorded in due time was genuine, and prayed that tbe defect might be remedied. The court refused to permit the amendment to be filed and the complainant excepted.
Upon the heaving, tbe court dismissed tbe bill with costs and dissolved the injunction with damages, but without fixing the amount. Bartlett has appealed. Since the appeal was prayed, and since the record was filed in this court, the decree in respect to the amount of damages has been awarded in the circuit court, and the sam ^xe(^flt $150. The amendment has been brought up by certiorari.
Taylor, &c. vs. Burk, V Mon. 88, and Hayne’s representatives vs. Campbell, VI Mon. 287, are authorities w5ic5 show conclusively that in this case the chancellor ought not to have compelled Carter Blanton to accept the deed, dated the 15th of March, 1824. The defect in Bartlett’s chain of title was palpable. Indeed be showed no title whatever. For the deed from Smoot to him, not having been proved within proper time, ren-dored-the. certificate of the clerk no evidence of it; *429 execution. It was said in argument, that his title was not questioned. It was certainly not admitted by the answers and it was his duty to show a complete title upon his application for a specific execution of the contract. The answer required full pi oof. lie failed to make it in a point essential to his success. As if aware that his failure must be fatal, he applied for leave to amend his bill and to make Smoot a party. Did the court err in refusing it? we think not.
Duty of vendor, when he applies to chancellor to enforce specific execution of contract for conveyance of land, to show a complete title to the land. sós 'courts'" should regard ma¿e such allowances prevent their being dreum-. wüyadversarg,
1st.' Because it was his duty to inspect his own title, and to see that it was complete. He surely had ample time within which to complete his title after his contract with Blanton and before filing his bill. During that time, it seems he procured Mrs. Smoot’s relinquishment of dower. Ilis fa lure to obtain the correction of his deed in respect to its authentication must be attributed to ignorance or negligence, neither of which is a good excuse in law. We admit however, in the preparation of causes, that judges ought to regard the capacities of suitors and make such allowances for the ignorant, taking care not to indulge a culpable negligence, as will secure the administration of justice, and prevent their being circumvented and imposed on by a wily adversary; and
2d. Because, if the correction had been made and a complete deed had been exhibted from Smoot, duly authenticated, the court should, notwithstanding, have decided against the complainant.
There is not a particle of proof, showing that the complainant even offered to make a conveyance to Richard Blanton in his life time, or that Richard Blanton had lulled the compl unant into surety, as was the case of Cook vs. Hendricks, IV Mon. 500. It is very doubtful, whether the complainant would be entitled to relief' if he had even shown by proof, that it was agreed be-twen him and Blanton, that the title should be retained in consequence of the danger to be apprehended from judgment creditors. Such arrangements are not compatible with strict justice or the policy of the law.. But how far a party to such an arrangement would- be precluded from relief in a court of chancery, when the relief sought is based upon an agreement of the kind, vye shall not now determine. J. J. Marshall was not in *430 terested in the original contract. He agreed verbally with Clanton after the purchase, to take and pay for jjajf jan(j> Marshall states in his deposition, that about the time a certain transaction with Macey took place (but when it was, is not shown in any deposition) Bartlett said something about making a title, and that he, Marshall, remarked that be had as leave the title should remain in him. This is the strongest evidence adduced to show that Bartlett was lulled into security and induced not to make the title in conformity to his written obligation. It is altogether insufficient in our opinion. Richard Blanton was not present at the time Marshall made the remark. Bartlett ought not to have regarded Marshall as having any right to control the performance of the contract with Blanton. He should at least have shown that Blanton authorized Marshall to postpone making the conveyance, or that he sanctioned the postponement when made. There is no evidence to that effect. For any thing which we can learn from the record, the condition of his bond may have been forfeited years before Marshall remarked that “he had as leave the title should remain.”
In no case, where vendee of land has fairly obtained a. judgment at law, and chancellor has not before the judgment had possession of the case, ought a specific performance to be enforced.
Error, in failure to fix the amount of damages in a decree dissolving an injunction, may be corrected by application to the inferior court.
Under all the circumstances, the language used in the case of Oldham vs. Woods, III Mon. 48, is strictly applicable, wherein it is said “that in no case, where the advantage at law has been fairly obtained, and the chancellor has not before had possession of the cause, ought relief to be given.”
The complainant has no ground for asking the interposition of the chancellor on account of the rents of the land. These were balanced by the interest on the purchase money, Blanton’s assignee having recovered the principal only. Neither can he complain on account of the natural decay of the improvements and make the failure of his vendee to keep them in repair a sufficient ground, unconnected with any other upon which to enforce a specific execution of the contract, and to avoid the legal advantage of his adversary. The deterioration of the price of woodland would be equally availing independent of any other consideration.
It was error in the court to give damages without fixing their amount. This error we believe might have been corrected by application to the circuit court. But in the attempt made to do it, the court, it seems, have *431 fallen into a greater error for §‘150 damages, have been given upon §1,200 enjoined. For this cause, the original decree and amendment so far as they relate to damages, are reversed and the cause remanded, with directions to decree against the appellant for §120, damages only.
b^counseKor tiL'appellee's.'
Crittenden, for appellant; Mills and Brown,for appel-lees.
Each party in this, court must pay their own costs.
The counsel for the appellees presented the following suggestions to the court, with a view to obtain a modification of the above opinion.
The counsel for Blanton observe in the details of the opinion, delivered a departure from the long settled practice of the country, and solicit its correction.
The judgment enjoined, bears interest by express statute, being founded on contract.
The question whether ten per centum damages on dissolution should be given on the amount enjoined, should be fixed at granting or dissolving the injunction, isn ot now open for adjudication, but has been settled twenty-seven years ago, and has ruled the practice ever since, so far as the knowledge of the counsel extends. It must be allowed on the amount, when the injunction is dissolved; see Green's administratrix vs. Gill, printed decisions (often called Sneed’s reports) 320, fall term. 1803. This decision has received the silent approbation of this court ever since.
The court below, in making the amendment, which this court says is erroneous, followed this decision, and placed the damages on the amount due at dissolution, and this court takes it back to granting.
It is respectfully insisted, that the long settled construction of the statute, ought not to be shaken, to the injury of the parties now, and the production of many writs of error. It is a point of practice of every days occurrence.
Response to suggestions.
On dis'olution of injunction, the ten per cent damages should be given on the amount on-joinid at time of granting the injunction and not on amount enjoined at time of dissolving it
The court on the 12iA of October 1830, delivered the fob lowing response, to the suggestions, fur a modification of the opinion.
In the suggestions of counsel for a modification of opinion, it is said “The question whether ten per cen-tum damages on dissolution should be given on the amount enjoined at granting or dissolving the injunction, is not now open for adjudication, but has been settled twenty-seven years ago. It must be allowed on the amount, when the injunction is dissolved; see Green’s administratrix vs. Gill, printed decisions, 320, fall term, 1803. This decision has received the silent approbation of this court ever since»”
The counsel for Bartlett are clearly mistaken in supposing that the case of Green’s administratrix vs. Gill has rffied the practice of fixing the amotmt of damages on dissolution, without exception since its date. The case of Veech vs. Pennebaker, II Bibb, 328, is an authority to the contrary, and proves that the damages should be allowed on the amount compounded of the principal and interest thereon, up to the time of granting the injunction. This latter authority meets our approbation, particularly, when applied to this case. Here the judgment enjoined was for $1200 in damages. But for the act of 1812, (II Dig. 675) the judgment would not bear interest upon the dissolution of the injunction, independent of that act, the damages on dissolution could only have been allowed on the sum of §T200. All that the act proposes to accomplish is, to giv e legal interest from the rendition of the judgment in the event of its affirmance, and it is made the duty of the clerk to endorse the execution accordingly. It does not contemplate the introduction of a new rule to ascertain, and to enlarge the amount of damages by directing the chancellor to take into consideration, the amount of interest which may have accrued. The injunction is dissolved for precisely the same sum, tor which it was granted, to-wit: $1200, and then interest follows as a consequence by operation of the act of 1812.
'The opinion must remain unaltered.
Suggestions by 0°un'eJ for appeliaftt'-
John J. Crittenden^ as counsel for the appellant, presented the following suggestions to the court, with a view to obtain a modification of the opinion.
This is a case of unexampled hardship, and deserves, as the undersigned most earnestly believes, the recon-«¡deration of the court.
It would be superfluous to trouble the court with á statement of this case. The suggestions intended to be submmitted, will be sufficiently understood by the court without it.
Bartlett in his bill alleged, that he had a good title to the land in question; he sets it out particularly,and exhibits the patent, and the several deeds conveying the title down to him. A party objecting to title in such a •case, ought to point out his objection particularly, in his answer, that there may be no surprise. This is believed to be consonant to the rules of reason and equity, and to the great principles upon which all pleadings in courts of justice are founded. Carter Blanton in his answer, has pointed out no defect in the evidences of title exhibited by Bar.lett. He has made no objection to the title, unless, indeed such objection is to be found hidden, and lurking in this general and vague sentence of his answer. “This respondent does not admit any of the statements contained in complainants bill,5’ &c. This cannot be construed as having any reference to the complainants exhibits. Did it intend to dispute the genuineness of the patent? Certainly not, and no more did it intend to question the exhibited conveyances of the title. It is believed tó be clear, that the above quoted sentence, relates to other matters in the bill, resting upon the “statements of the complainant”. The whole tenor of the answer seems to me, to recognize. the title of the complainant, and to place the defence upon other grounds.
Was it proper under these circumstances, to allow Blanton upon the final heaiing, or in this court, to spring upon his unwarned adversary, an objection to the formal authentication of his deed? . It seems to me-, that it was not, and that his own answer had silenced him upon the subject. But if in this I be mistaken, I contend that the court ought, under all the circumstances, to have permitted him to file his amended bill *434 for the correction of that informality? But it is said, that Bartlett ought to have found out this defect before, and corrected it, and thathis failure to do so must be attributed “to ignorance or negligence, neither of which is a good excuse in law.”
Bartlett was in point of fact ignorant, that his deed was not duly authenticated, up to the time when he offered his amended bill. He made solemn oath that he was; and is this ignorance, so criminal, as to induce the chancellor to punish him for it by the irrevocable sacrifice of his cause, and of his estate? The doctrine thatneither “ignorance nor negligence is any excuse in law,” is not, it is hoped, applicable to instances of this sort.
How often does a chancellor upon the final hearing of a cause, of himself, order new parties to be made, &c. and how many analagous cases are there in this court? Why does not the chancellor and this court, in all these cases, say to the complainants, there is a want of proper parties; that you did not make them, ■must be attributed to “ignorance or negligence, neither of which is a good excuse in law,” and,your suit must be dismissed.
I persuade myself, that upon a re-consideration, this court will not find any thing so culpable in the ignorance or negligence of Bartlett, as to merit the sacrifice of his cause, if in other respects, it appears to be conscientious and equitable.
But it has not so appeared to the court, and according to .the opinion delivered, if Bartlett’s title had been perfect, the case ought to have been decided against him, because he has shown no sufficient excuse for not having before conveyed.
j. J. Marshall, though not a party to the original contract with Bartlett, was afterwards by arrangement with Richard Blanton, admitted as a participator and partner in the purchase; was recognized as such by all the parties; paid part of the purchase money; was consulted by barter Blanton (who became assignee of the bond, as a security for a debt of Marshall and Blan-ton) as to the sale of the land, &c. See Ballard’s deposition and Marshall’s.
*435 Marshall, thus a partner, recognized, and acting as such, told Bartlett, on some occasion, when he (Bartlett) said something about making the title, that he had as leave it should remain in him. And Marshall in his deposition (p. 28) adds, that he “never viewed Mr. Bartlett in default, in making the title.” But says the court, “Bartlett ought not to have regarded Marshall as having any right to control the performance of the contract with Blanton. He should at least have shown, that Blanton authorized Marshall to postpone making the conveyance, or that he sanctioned the postponement when made.”
Blanton admitted Marshall to “go his halves in the purchase.” Did not this give him authority enough for the present purpose? Can it be said to be fair for Blanton to interpose such a partner; for that partner to lull Bartlett into security; and then for Blanton to take advantage of Bartlett’s credulity or confidence in the declarations of his partner? Without dwelling longer on this subject, it does seem to me, that upon a liberal and equitable view of the evidence relating to this point, enough does appear to account for and excuse Bartlett’s failure to convey according to his bond, and to exonerate him from the imputation of trifling with, or neglect of his contract. That, in the estimation of a court of chancery, would be a fraud, and it would not interpose to relieve a party from the consequences of his own fraud. The case of Oldham vs. Wood is a marked case of neglect.
Marshall and Blanton were partners; and is it not reasonable to infer, that the one knew what the other did, in relation to the partnership subject? And even if the subsequent sanction of Blanton was necessary to give any effect to Marshall’s arrangement with Bartlett, to postpone the making a conveyance, is not that sanction fairly to be inferred? It is certainly no violent inference to suppose, that Blanton knew of this arrangement; there is no evidence that he ever dissented. The circumstances all tend to a different conclusion. He conformed to it in his conduct, for he never demanded a conveyance, and sued for damages. And his as-signee, Carter Blanton, for a long time pursued the same course; and thereby manifested his understanding, that Bartlett was in no default. If Bartlett was *436 in default, and liable to pay for it $1200, how did it happen, that. Carter Blanton wished to sell the land to Ballard, for ‡800, and was only prevented by Marshall from so doing?
A question is made “whether the complainant would be entitled to relief, if he had even shown by proof, that it was agreed between him and Blanton, that the title should be retained in consequence of the danger-to be apprehended from judgment creditors.” The facts here supposed, are stated more strongly than they exist in the bill. In that, it is stated, that the complainant offered to convey; but that Blanton “declined” receiving a deed at that time, giving as his reason for it, the fear that some of his creditors might levy upon it; “upon these suggestions, the deed was not made.” Can this be fraudulent on the part of Bartlett, and turned as a sword against him by Blanton or his assignee? Bartlett could not convey without the assent of Blan-ton; a deed made by him, and declined or refused by Blanton, would not have passed the title; and Blanton’s adding his reasons, whatever they might be, for declining to accept a deed, could not possibly involve him in any fraud. Besides, the interest which Blanton held m virtue of the bond, was not subject to the payment of his debts,eitl er in law or equity; nor could his failure to perfect his title, though for the very purpose 'of evading his creditors, be considered as a fraud in equity. According to the measure of this or that man’s foot or conscience, it might be improper or immoral. But the law and rule of chancery never considered it a fraud. If it had been so considered, the same equity would undoubtedly have relieved against it, at the suit of the creditor, by compelling the creditor to perfect his title. But equity never did this. There is no such case, There is.no instance of a bill to compela man to acquire a fund for the payment of his debts. And equity would no more compel a man to accept a deed for such a purpose, than she would compel him to go to. work to make money for the payment of his debts: I Bibb, 306-8.
It does seem to me, that equity must be pushed into puritaniim, or into some exaggerated system of ethics, before Bartlett’s conduct in this particular can be pronounced fraudulent. He has been merely'- passive; *437 merely assented, (at the worst) and at the instance of Blanton, not to do that, which, without Blanton’s consent he could not have done, if he would.
Jt is said in the opinion delivered, that “he (Marshall) agreed verbally with Blanton after the purchase to take and pay for half the land.” The argeement as proved by Marshall was, that he was “'to go his halves in the purchase.” Did the court intend . to lay any stress upon, or to regard as material in this cause, the circumstance, thatthe agreementof partnership between Marshall and Blanton was verbal, only, and not reduced to writing? A bond for the conveyance of land, is not land. The statute of frauds and perjuries does not apply to contracts for the sale of such bonds, any more than it does to contracts for the sale of bonds for money or other things. It is to sale of lands, and not of bonds or contracts, that the statule applies. The case of Buford, &c. vs. Buford, before referred to, is an instance, I Bibb, 305, &c. But if the statute is to receive this extended construction, what does it provide. Only, that “no action shall be brought, whereby to charge the defendant,” &c. “upon any contract for the sale of lands,” &c. unless it be in writing, &c. But for all other purposes, such contracts, though verbsd, are effectual, and may be proved by parol,
This doctrine is illustrated by numerous decisions of' this court. Take, for instance, the case of a vendee by parol, who settles upon the land purchased, and makes improvements. The vendor af.erwar Js refuses to ratify or comply with the contract. The vendee sues, and upon proof of his parol purchase, recovers for his improvements, which he could not otherwise do, as without proof of his parol contract for the purchase, he would appear as a mere squatter or intruder.
But independent of all the above considerations, if Blanton permitted Marshall to hold himself out as a partner in the purchase, and to act as such, it is sufficient for the present purpose, whether he was in reality a partner or not.
But if Bartlett has no right to insist that Blanton should now accept a conveyance of the land, it is still insisted that this decree is inequitable in not allowing Bartlett some compensation for the rents and profits of *438 the land, and for the disrepair and deterioration of the improvements, while in the po-’-session of the Blantons. As to the claim here insisíed o.i for ren'.s, this court say, “these (rents) we-e balanced by the interest on thepur-chase money, Blan on’s assignee having recovered the principal.” By the express terms of Bartlett’s bond, Blanton was not entitled to interest; the claim for interest is exp essly negatived. The interest, therefore, to which he am not entitled, cannot be balanced against the rents, to which, upon legal principles, Bartlett is entitled, and which he did not renounce, as Blantondid, all claim for interest. The parties had a right to make their bargain as they pleased, and Blanton’s renunciation of all claim of interest, justifies no inference of Bartlett’s renouncing his claim for rents. The case of Oldham vs. Woods, III Mon. 5.), is an authority in favor of the claim for rents. But if this principle of balancing, suggested by tbip court, is to be considered as prevailing up to the time of the judgment obtained by Blanton, in March, 1825, surely, from that time, Bartlett ought to be allowed rents. Otherwise, that judgment entitling Blanton to interest, at least from the date of the injunction, he will have both interest and the rents and profits of the land from that time. This cannot be right. The depositions of Marshall and Ballard prove that Blanton has had the use and possession of the property.
But if all the rents are to be balanced against the interest, is not Bartlett entitled to compensation for damage that the farm has sustained? Rentcompensates for the ordinary use of the thing let, and not for damage done or permitted.
In this case, Carter Blanton states, in his answer, that the place “has fallen into bad repair,” and urges that as a reason why he ought not to be* compelled to take it, and denies that he had ever taken possession of it. This latter statement is directly contradicted by the testiTo-ny of Marshall, and more particularly of Ballard. Now the manner in which Blanton urges the “bad repair” of the place, cannot justify us in understanding that the “bad repair” mentioned by him, is nothing more than the necessary effect of time and of careful husbandry. „ It ought, therefore, to be compensated for. The principle upon which these cases go, is that of placing the *439 parties in the condition they were in at the time of the contract. This principiéis violated by compelling him to receive back the place,‘‘fallen into bad repair.” The testimony estimates this deterioration at from $200 to $150. Yet Bartlett has been compelled to take back the place, and that without compensation for the deterioration.
Response to suggestions.
If vendee of land retain possession after he ha1 rescinded the contract by obtaining judgment at law for failure to convey, he is accountable for rents and waste.
As to the title of Bartlett: Charles Williams is a sub* scribing witness to the deed from Smoot, which is informally authenticated; and upon examining his deposition, (taken for another purpose,) it seems to me it majr rationally be considered as proving that deed; (see this deposition, 27.)
Willis Blanton, though made a defendant, was not a necessary party. Taylor, &c. vs Bush, V Mon. 87, Lemon vs. Brown, IV Bibb, 309. He had no right to contest the equity set up by the bill, or put those matters in issue, and 1 ther efore take no notice of his answer.
These hasty and desultory remarks have been extended far beyond the limits 1 intended. They are submitted to the court as mere suggestions. And the sincerity and strength of my own convictions, inspire me with the hope that something may be found in them, which, in the opinion of the court, will entitle my client to a reconsideration and re-argument of his case, and ultimately to a change of the decision which has been given.
On the ‘29th of October, 1830, the court delivered the following response, to the suggestions made bp appellant's counsel.
Upon the examination of the record in this cause, the question of rents subsequent to the verdict, and judgment at law did not occur to the court, nor was it suggested in argument. Upon a re-consideration of the case, we are of opinion that Bartlett is entitled to rent from the date of the verdict, so long as the possession of the land was held by Blanton, his vendee, and those claiming under him. it is in proof, that the land was thus held as late as 1827, and it may be, that it was so held to a later period, if not down to the present time. The case of Oldham vs. Woods, III Monroe 50, is an authority which requires the allowance of rents as above in the present suit. There seems to have been *440 much difficulty in adopting a general rule, by which to acUus^ ar,d settle dcmcgis, intircst, and rent, alike applicable to all cases of contracts for land, which are rescinded. The cases of Griffith vs. Depew, &c. III Marshall, 177, Richardson, &c. vs. McKinson, &c. select cases, 320; Ewing’s heirs, &c, vs. Handley’s executors, IV Littell, 371, prove the difficulty in ascertaining what the general rule ought tobe; if they do not prove, that there is no general well settled rule on the subject.
Judgement damagrTre-’1 covered by ■vendeeoDand ^onve^T'ODs interest from* its date, aft er obtained h°n against it has been dissolved,
In the present case, by the dissolution of the injunc-^on’ Plantón will be entitled to interest from the date of the common law judgment. From the same time rents must be allowed Bartlett, and in addition thereto, we Ihink'he should be allowed for any waste wdrich may have been committed. The rents and waste should be reduced by the value, at the time of assessment, of any and valuable improvements, which may have been made on the land by Blanton, or those claiming under him, prior to the commencement of (he action at law, and (he balance left, should be set off a gainst the judgment at law. The foimer mandate and opinion is therefore modified, and upon the return of the cause to the circuit couit, an account must be taken with a view to effectuate (he principles hereby prescribed, and such other proceedings may be had not inconsistent with this and the former opinion as may be equitable.